IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

20 AUG 27  PM 4:00

CLERK J. Hodge
SO. DIST. OF GA.

EVA CHAPMAN,                          *
                                      *
        Plaintiff,                    *
                                      *     CV 318-014
    v.                                *
                                      *
ROBERT WILKIE, Secretary,             *
United States Department of           *
Veterans Affairs,                     *
                                      *
        Defendant.                    *

## O R D E R

On October 29, 2018, Plaintiff Eva Chapman, who is proceeding
pro se, filed an Amended Complaint as directed by the Court in its
Dismissal Order of October 9, 2018 (doc. no. 16).  Following
another motion to dismiss filed by her former employer, Defendant
Robert Wilkie, the Secretary of the United States Department of
Veterans Affairs ("VA"), the Court held that the only claims upon
which Plaintiff may proceed are her claims that she was not
selected for the position of Registered Nurse (Wound Care) (OA-
12-709875-DP) or of Supervisory Program Specialist (OA-12-701395-
DAHP) in 2012 in retaliation for her prior protected activity.
(See Order of April 5, 2019, Doc. No. 24.)  Following the case's

discovery period, Defendant filed a motion for summary judgment, which the Court resolves herein.

## I.   INTRODUCTORY REMARKS

At the outset, the Court notes that Plaintiff has not adequately fulfilled the requirements of Federal Rule of Civil Procedure 56 and this district's Local Rules in litigating the summary judgment motion.   As required by any movant at summary judgment, Defendant provided "a separate, short, and concise statement of material facts" supported by citation to record evidence. (See Def.'s St. of Undisputed Material Facts ("SOUMF"), Doc. No. 37-35.)  Plaintiff was required to controvert these facts, but not with conclusory[1] assertions, opinion, and speculation. See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (stating that subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact in order to withstand summary judgment).   Plaintiff's version of the facts must be supported by *admissible* evidence.   In directly responding to Defendant's SOUMF, Plaintiff does not cite to any additional evidence but simply denies each and every factual assertion,

---

[1] "'Conclusory' means 'expressing a factual inference without stating the underlying facts on which the inference is based.'" Anderson v. Brown Indus., Inc., 2012 WL 12501083, *2 n.3 (N.D. Ga. Nov. 5, 2012) (quoting Black's Law Dictionary 308 (8th ed. 2004)).

sometimes only with one word "disputed."   (See Doc. No. 43-1.)
Plaintiff also presents her own Statement of Undisputed Material
Facts (doc. no. 43-2), which are dominated by her unsupported
beliefs, opinion, and innuendo.   Her conclusory statements and
denials cannot serve to refute Defendant's properly supported
statements of material fact.   Moreover, when there is a genuine
dispute of fact, it is largely immaterial to the issues in the
case.   The Court particularly notes that Plaintiff's submitted
evidence and argument center primarily upon her attempt to
relitigate matters that transpired two and three years before the
relevant time period in this case.

Importantly, a pro se litigant "does not escape the essential
burden under summary judgment standards of establishing that there
is a genuine issue as to a fact material to [her] case in order to
avert summary judgment."   Brown v. Crawford, 906 F.2d 667, 670
(11th Cir. 1990).   Thus, where a fact asserted by Defendant in its
SOUMF is supported by the evidentiary materials submitted in
support and Plaintiff fails to rebut the supported fact with her
own admissible evidence, the fact is undisputed.   A citation to
Defendant's SOUMF herein indicates that the Court deems the fact
admitted as uncontroverted by Plaintiff.   The parties should rest
assured that even though federal judges are not obligated to cull
the record in search of facts not included in the statements of
fact, see Johnson v. City of Fort Lauderdale, Fla., 126 F.3d1372,

3

1373 (11th Cir. 1997), the Court conducted a thorough review of the admissible evidence of record to determine whether there is an evidentiary basis for any assertion of either party.  Of course, where there is conflicting evidence on any particular, *relevant* point, the Court views the evidence in the light most favorable to Plaintiff.

Finally, Plaintiff fails to make a single argument in opposition to Defendant's motion for summary judgment respecting the position of Supervisory Program Specialist (OA-12-701395-DAHP).  Thus, the Court will make short work of this claim so long as Defendant's factual contentions respecting this claim are supported by record evidence and those facts require judgment in Defendant's favor.  Indeed, other district courts in this circuit have found that when a non-movant fails to address a claim at summary judgment but responds to other arguments, the non-movant abandons these claims.  See Johns v. CSX Transp., Inc., 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016) (citing cases).

## II.  FACTUAL BACKGROUND

A.  Plaintiff's Employment

On September 28, 2008, Plaintiff was appointed, subject to a two-year probationary term, as a Staff Nurse at the Carl Vinson VA

4

Medical Center in Dublin, Georgia.[2]   (Def.'s SOUMF ¶ 1.)   While employed with the Carl Vinson VA as a Staff Nurse, Plaintiff provided generalized nursing care to patients in various units. (Id. ¶ 2.)   According to Plaintiff, she also provided specialized nursing care to include wound care.   (See Pl.'s SOUMF ¶ 2.)

On September 20, 2010, a Summary Review Board recommended Plaintiff's separation from VA employment.   (Def.'s SOUMF ¶ 3.) The Board found that although her nursing practice had been satisfactory, Plaintiff's interpersonal relationships and overall rating were unsatisfactory.   (Id. ¶ 5.)   More particularly, the Board found Plaintiff had engaged in conduct unbecoming a VA employee; had unacceptable attendance (absences amounting to 28% of her scheduled hours over a nearly two-year period without adequate documentation to support the excessive leave); and had engaged in consistent conduct creating a hostile work environment. (Id. ¶ 4.)   Defendant allowed Plaintiff the option of resigning in

---

[2] This first fact is a prime example of Plaintiff's failure of proof.  Defendant provides the Notice of Personnel Action, in which the probationary period is expressly noted. (Def.'s Mot. for Summ. J., Ex. 1 at 2 ("Subject to Completion of 2 Year Probationary Period Commencing *09-28-2008.").)  Moreover, the statutory authority for her appointment is 38 U.S.C. § 7401 et seq.; thereunder, § 7403(b)(1) expressly provides that nursing appointments are subject to a two-year probationary period.  In response, Plaintiff points to the same evidence – the Notice of Personnel Action and the statutory authority – but summarily denies that she was on probationary status.  Her self-serving statement to the contrary does not create a genuine dispute of fact on the issue of whether she was a probationary employee.

lieu of termination, which she accepted.  (Id. ¶ 7.)  The effective date of resignation was September 24, 2010.[3] (Id. ¶ 8.)

B.  Plaintiff's Prior EEO (Equal Employment Opportunity) Activity

Prior to the termination of her employment, in March 2009, Plaintiff sought informal counseling related to claims that her supervisor, Ms. Skinner-Davis, discriminated against her on the basis of race in matters related to scheduling and leave requests. (Id. ¶ 10.)  The matter was closed on June 10, 2009, and Plaintiff did not file a formal complaint of discrimination.  (Id. ¶¶ 10-11.)

One year later, on June 25, 2010, Plaintiff again sought informal counseling, this time directed toward Nurse Manager Sally Reese.  (See Def.'s Mot. for Summ. J., Ex. 9.)  The claim of "Reprisal" is listed and the March 2009 matter is referenced. (Id.)  Plaintiff claimed that Nurse Reese harassed her about her leave, emailed other nurse managers and interviewed various staff members about her, and misrepresented facts in a memorandum against her.  Plaintiff also complained about Nurse Reese's unfair scheduling and management.  (Id.)

_____

[3] Plaintiff takes exception to the process utilized by Defendant in terminating her employment and with the stated reasons for termination.  (See Pl.'s SOUMF ¶¶ 3-9.)  Matters related to Plaintiff's termination/resignation are not at issue in this retaliation case, which is based upon Defendant's failure to rehire Plaintiff two years after her termination/resignation.

On September 24, 2010, the last day of her employment, Plaintiff filed a form complaint of discrimination based upon the June 2010 claims. (Def.'s Mot. for Summ. J., Ex. 9.) She amended her complaint on October 8, 2010, alleging that human resources tried to keep favorable evidence from the Summary Review Board, that she had been put in absent-without-leave status and not paid, and that four individuals accessed her health records without authorization. (Id. Ex. 11; Def.'s SOUMF ¶ 14.) On February 21, 2012, the VA's Office of Employment Discrimination Complaint Adjudication determined in a Final Agency Decision that Plaintiff failed to prove she was discriminated against based on reprisal and disability.[4] (Def.'s SOUMF ¶ 17.) The decision determined, however, that the VA's Office of Resolution Management had erred in previously dismissing Plaintiff's allegation that her medical records were improperly accessed and directed Plaintiff to counseling on that claim.[5] (Id. ¶ 18.)

On March 14, 2012, Plaintiff contacted an EEO counselor and later filed a complaint of discrimination, again complaining that

---

[4] Plaintiff apparently raised her disability discrimination charge as another basis of discrimination sometime after June 25, 2010. (See Def.'s Mot. for Summ. J., Ex. 12, Final Agency Decision at 3 n.2.)

[5] Plaintiff expends a great deal of energy explaining that the EEO counselor did not state her claims correctly and trying to reargue the merits of her claims involved in this prior EEO case. The underlying facts and circumstances, however, are not relevant to Plaintiff's claims of failure to hire based upon reprisal.

employees improperly accessed her medical records in 2009 and 2010. She also alleged that she was not hired for three VA positions between March 27, 2012 and June 12, 2012 due to disability, race, and reprisal for prior EEO activity. (Id. ¶ 19; see also Def.'s Mot. for Summ. J., Exs. 13-15.) A mediation occurred on June 5, 2012. John S. Goldman, Director of the Carl Vinson VA Medical Center, and Sue Preston, Associate Director of Patient Care Service, were in attendance. (Id. ¶ 21.)

C.   Position of Registered Nurse (Wound Care) (OA-12-709875-DP)

In July 2012, the Carl Vinson VA Medical Center announced a vacancy for a Registered Nurse (Wound Care) with an open period from July 23, 2012 to August 13, 2012. (Id. ¶ 22.) The announcement sought a candidate to coordinate and manage caregivers and patients with acute and chronic wounds, fistulas, pressure ulcers, and ostomies. (Id. ¶ 23.) The position also required the candidate to assess wound care practices at the facility and provide education to nursing personnel. (Id. ¶ 24.) The announcement highlighted, in underscore, that a certification in wound care nursing was desirable and provided that, at a minimum, the selected candidate would have to obtain certification within one year. (Id. ¶ 25.) It further instructed:

> **IN DESCRIBING YOUR EXPERIENCE, PLEASE BE CLEAR AND SPECIFIC.  WE MAY NOT MAKE ASSUMPTIONS REGARDING YOUR EXPERIENCE.**

(Id. ¶ 26 (emphasis in original).)

8

Plaintiff applied for the position.  Her resume included the two years of work experience as a Staff Nurse at the VA as well as her experience as a school nurse from 2005 to 2007 and various nursing experiences from the late eighties throughout the nineties.  (See Def.'s Mot. for Summ. J., Ex. 2.)  The resume did not reflect a certification in wound care nursing.  (See id.)  In fact, the term "wound care" appears nowhere on her resume.  (See id.; Def.'s SOUMF ¶ 31.)

The VA's human resources department identified three candidates as potentially eligible for the wound care nursing vacancy:  Plaintiff, Robert Rech, and Christine Grizzard.  (Id. ¶ 31.)  All three candidates were licensed as Registered Nurses and none indicated that they held a wound care certification.  However, Rech listed wound care as among his job responsibilities during his two-year experience in an emergency department.  And, Grizzard made several passing references to her wound care responsibilities in recounting her many years of experience as a medical-surgical nurse from 1994 forward.  (Id. ¶¶ 34-37; see also Def.'s Mot. for Summ. J., Exs. 20 & 21.)

Sue Preston, who had been involved in the mediation of Plaintiff's prior complaints about job selection in 2012, was the selecting official for the Registered Nurse (Wound Care) position.  Preston determined that there were no qualified applicants with adequate wound care experience and returned the certificate on

August 23, 2012 without conducting interviews. (Def.'s SOUMF ¶ 39.)   The wound care nurse position was re-announced under a different Job Announcement with an open period from August 29, 2012 to September 20, 2012. (Id. ¶ 40.)   Plaintiff did not apply for this re-announced position. (Id. ¶ 41.)   Ultimately, Teresa Conner was selected for the position.   Conner had a wound care certification and had worked the previous four years as the lead wound care nurse at the Houston Medical Center. (Id. ¶ 42.)

D.   Position of Supervisory Program Specialist (OA-12-701395-DAHP)

In July 2012, the Carl Vinson VA Medical Center also announced a vacancy for a Supervisory Program Specialist with an open period from July 12, 2012 to August 1, 2012. (Id. ¶ 43.)   The summary of this position states that the selectee would serve as a supervisor for non-VA purchased care.[6]   (Def.'s Mot. for Summ. J., Ex. 26.)

Plaintiff submitted a virtually identical resume in support of her application for this position. (Def.'s SOUMF ¶ 49.)   The selecting official for this position was Joan L. White-Wagoner, the Chief of Health Administration. (Id. ¶ 53.)   White-Wagoner did not know Plaintiff and had no knowledge of her prior EEO activity. (Id. ¶¶ 55-56.)   In her Amended Complaint, Plaintiff alleges that Human Resources Specialist David Petrasek had placed

---

[6] For a more detailed description of this position, see Exhibit 26 to Defendant's motion for summary judgment.

her on a do-not-hire list because of an EEO complaint she had filed against him previously.  (Am. Compl. at 5, ¶ 2.)  Petrasek, however, had no involvement in the selection process for the Supervisory Program Specialist position.  (Def.'s SOUMF ¶ 58.) Moreover, the only discrimination complaint of record against Petrasek is dated June 13, 2014.  (Id. ¶ 60.)  White-Wagoner selected Rhonda Benson, who had been working as a Lead Claims Analyst at the Carl Vinson VA since 2009, for the position. (Id. ¶ 57.)

### III. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party.  Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case.

> The relevant rules of substantive law dictate the
> materiality of a disputed fact. A genuine issue of
> material fact does not exist unless there is sufficient
> evidence favoring the nonmoving party for a reasonable
> jury to return a verdict in its favor.

Chapman, 229 F.3d at 1023 (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

The Clerk gave the nonmoving party, the Plaintiff, notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 38.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## IV. LEGAL ANALYSIS

Plaintiff's claims of reprisal for prior EEO activity arise under Title VII and the Rehabilitation Act. The anti-retaliation provision of Title VII forbids retaliation against an individual who has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a).

12

Similarly, the Rehabilitation Act, which incorporates the anti-retaliation provision of the Americans with Disabilities Act ("ADA"), forbids retaliation by the federal government against an individual who has "opposed any act or practice made unlawful" by the ADA.   See 29 U.S.C. § 794(d) (incorporating the anti-retaliation provision of the ADA, 42 U.S.C. § 12203). Retaliation claims under the Rehabilitation Act are analyzed under the same framework used to assess Title VII retaliation claims. E.g., Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 F. App'x 243, 245 (11th Cir. 2011).

In a case based only upon circumstantial evidence, as here, the court will use the McDonnell Douglas burden shifting framework in evaluating a motion for summary judgment.[7]   Under this framework, the plaintiff bears the initial burden of creating an inference of discrimination by establishing a prima facie case. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).   Once a plaintiff has done so, the burden shifts to the employer to articulate legitimate, non-retaliatory reasons for the challenged employment action.   Id.   If the employer proffers such reasons, the burden shifts back to the plaintiff to show that the employer's proffered reasons are merely pretext for prohibited retaliatory conduct.   Id.   The plaintiff must meet the proffered

---

[7] Plaintiff has presented no direct evidence of reprisal.

13

reasons "head on and rebut [them]." Chapman, 229 F.3d at 1030. The plaintiff cannot survive summary judgment "by simply quarreling with the wisdom" of these reasons. Id. Rather, the plaintiff must produce a reason sufficient to allow a reasonable factfinder to determine that the proffered reasons were not what actually motivated the employer's conduct. Crockett v. GEO Grp., Inc., 582 F. App'x 793, 797 (11th Cir. 2014) (quoted source omitted).

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was some causal relationship between the two events. Furcron v. Mail Ctrs. Plus, LLC, 843 F.3d 1295, 1310 (11th Cir. 2016). Plaintiff can establish the first two prongs of the *prima facie* case in that she engaged in statutorily protected activity in filing prior EEO complaints and she was not hired for two announced positions. In consideration of the causal-relationship prong, however, Plaintiff's case begins to unravel. Her reprisal yarn becomes completely unspun once Defendant offers its legitimate, non-retaliatory reasons for its failure to hire her – reasons that she fails to rebut.

A.   *Prima Facie* Showing

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct [and] that

the protected activity and the adverse employment action were not wholly unrelated." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000). "For purposes of a *prima facie* case, 'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'" Id. However, "where a substantial period of time has elapsed between the two events – engagement in the protected activity and the adverse employment action – the causal connection is less likely to exist absent evidence demonstrating a connection between the two events." Breech v. Ala. Power Co., 962 F. Supp. 1447, 1461 (S.D. Ala. 1997).

With respect to the Supervisory Program Specialist position, Plaintiff has presented no evidence that the decision-maker, Joan L. White-Wagoner, knew Plaintiff or knew Plaintiff had engaged in prior EEO activity. In fact, Plaintiff alleges that she was not hired for that position because David Petrasek had placed her on a do-not-hire list. Yet, she offers no evidence that White-Wagoner knew about this alleged list, that she interacted with or consulted with Petrasek in her decision-making, or that Petrasek was in any way involved in filling the Supervisory Program Specialist position. Of note, the only discrimination claim involving Petrasek occurred almost two years after this position was announced and filled. Simply put, the record is devoid of evidence of a causal relationship between Plaintiff's prior EEO activity

15

and the failure to hire her to the position of Supervisory Program Specialist.  Indeed, Plaintiff presents no evidence or argument to support her claim as to this position.  Accordingly, Plaintiff has failed to show a *prima facie* case of retaliation, and Defendant is entitled to summary judgment on Plaintiff's claim that she was not hired for Supervisory Program Specialist as an act of Defendant's reprisal.

Turning now to the Registered Nurse (Wound Care) position, Plaintiff has presented evidence that the decision maker, Sue Preston, knew of Plaintiff's protected activity in 2012.[8]  That is, there is evidence that on June 5, 2012, Preston attended the mediation of Plaintiff's EEO complaints lodged in March 2012. Preston chose not to fill the original vacancy for this position when she returned the hiring certificate on August 23, 2012 – two and a half months after the mediation.  Of note, Preston presumably may have become aware of Plaintiff's application for the position earlier than the decision to return the certificate unfulfilled, thereby shortening the temporal proximity.  In any event, while Defendant urges that two and a half months is too remote to raise an inference of causation, the Court finds that the time period involved may be just inside the necessary proximity so as not to

---

[8] The EEO activity in 2009 and 2010 are too remote in time to be relevant to the causal inquiry.  Besides, there is no admissible evidence that Preston was in any way involved in or knew about this earlier EEO activity.

preclude an inference of causation.  Compare Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (three-month gap is too long to show causation) with Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (seven-week period is sufficient).  In any event, even assuming Plaintiff can establish a *prima facie* case through the temporal proximity between Preston's involvement in Plaintiff's EEO activity and Plaintiff's non-selection, her claim of retaliation cannot survive summary judgment because, as discussed below, she has failed to provide evidence that Defendant's articulated non-retaliatory reason not to hire her is pretext for retaliation.

B.   Non-Retaliatory Reason/Evidence of Pretext

The employer's burden to show a legitimate, non-retaliatory reason for an employment action is "exceedingly light." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997), abrogated on other grounds by Lewis v. City of Union City, Ga., 918 F.3d 1213 (11th Cir. 2019).  In this case, Defendant claims that Plaintiff was not hired for the Registered Nurse (Wound Care) position because neither Plaintiff nor the other applicants had the requisite wound care experience.  The record supports this reason. Despite the vacancy announcement's direction to be clear and specific in describing the applicant's qualifications, Plaintiff's resume did not note any wound care experience or particularized knowledge. In fact, Plaintiff's nursing experience was very similar to another

candidate, Ms. Grizzard, who mentioned wound care experience and was also not hired.   The record further bears out Defendant's reason for not hiring Plaintiff (or the others) because the ultimate hire, Teresa Conner, had recently specialized in wound care.

Plaintiff first tries to show pretext by quibbling with Defendant's evaluation of her experience and qualifications.   She emphasizes that she was obviously qualified because the Registered Nurse (Wound Care) position was listed in the "same series" (i.e., VN-0610) as her prior VA nursing position.   Numerous nursing specialties, however, can be listed under that same series, including respiratory, pediatric, geriatric, oncology, and wound care.   (See Decl. of Terence Oster, Doc. No. 46-1, ¶ 7.) Moreover, Plaintiff's belief that she was qualified for the position is not relevant to the pretext inquiry.   The inquiry into pretext is based on "*the employer's beliefs*, and not the employee's own perceptions of [her] performance." Holifield, 115 F.3d at 1565 (emphasis added); Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."). Moreover, the Court need only determine whether the difference between the selected candidate and Plaintiff is "of such weight and significance that no reasonable person, in the

exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." See Kidd v. Mando Am. Corp., 731 F.3d 1196, 1206 (11th Cir. 2013) (quoted source omitted). Here, given the fact that the first vacancy announcement was returned as unfilled without granting interviews to any candidate but then filled by a clearly superior wound care nurse on the second vacancy announcement, it cannot be said that no reasonable person would have selected Teresa Conner over Plaintiff.

Plaintiff next points out that she should have been provided preferential treatment as a veteran and as a former employee. However, the Registered Nurse (Wound Care) position was part of the excepted service under 38 U.S.C. § 7401 et seq., which means that selecting officials are not required to extend preference to applications from veterans as provided in the competitive service positions. (See Oster Decl. ¶ 8.[9]) And, while the VA has discretion to appoint certain former employees to competitive service positions without competition, this provision also did not apply to the Registered Nurse (Wound Care) position. (Id. ¶ 9 (citing 5 C.F.R. § 315-401(a)).). Accordingly, Plaintiff has failed to show pretext based upon the lack of preference she was given for the position because none was required.

---

[9] Terence Oster is the Associate Chief Human Capital Officer of the VA Southeast Network. (Oster Decl. ¶ 1.) His prior work experience includes serving as a Human Resource Officer at the Carl Vinson VA Medical Center. (Id.)

Finally, Plaintiff complains that Conner's application was dated October 1, 2012, which is outside of the closing date on the second vacancy announcement of September 20, 2012.  However, Plaintiff does not point to any authority that a selecting official is precluded from considering an untimely application for an excepted service position.  (See id. ¶ 13 ("Neither the collective bargaining agreement nor VA policy forbid a selecting official on an appointment under 38 U.S.C. § 7401(1) from considering an application submitted after the announced closing date.")  It also bears mentioning that Plaintiff did not even apply to the position pursuant to the second vacancy announcement; thus, her complaints about the process of filling that position fall flat.

In sum, even if Plaintiff were able to establish a *prima facie* case of retaliation in failing to hire her to the Registered Nurse (Wound Care) position, she has failed to adduce evidence creating a genuine issue of material fact that Defendant's reason for not hiring her was pretextual.  In fact, Defendant's hire of a certified, wound-care specialist substantiates its non-retaliatory motive in cancelling the first vacancy announcement to obtain a more qualified candidate.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's reprisal claim concerning the Registered Nurse (Wound Care) position.

## V.   CONCLUSION

Upon the foregoing, Defendant's motion for summary judgment (doc. no. 37) as to Plaintiff's claims of reprisal, the only remaining claims in this case, is **GRANTED**.   Costs are assessed against Plaintiff.   The Clerk is directed to **ENTER JUDGMENT** in favor of Defendant and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this 27th day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE